# IN THE COURT OF APPEALS OF IOWA

No. 23-1001
Filed July 2, 2025

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JOSHUA KELLY URANGA,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Boone County, Bethany Currie,
Judge.

A sex offender appeals his conviction for violation of sex offender registry
requirement. **AFFIRMED.**

Alexander Smith (argued) of Parrish Kruidenier L.L.P., Des Moines, for
appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino (argued),
Assistant Attorney General, for appellee.

Heard at oral argument by Schumacher, P.J., and Buller and Sandy, JJ.

**SANDY, Judge.**

Joshua Uranga appeals his conviction for violation of sex offender registry requirements, a class "D" felony, pursuant to Iowa Code sections 692A.103, .105, and .111 (2021). Uranga argues there was insufficient evidence to support his conviction and that the district court erred in failing to instruct the jury that the State had to prove that Uranga stayed away from his principal residence for more than five days. We affirm.

## I.    Background Facts and Proceedings

Uranga is a registered sex offender who is required to register as such under chapter 692A. Around September 2021, local authorities in Boone began to suspect that Uranga was not living at his registered address. Deputy Dan Ruter and other officers unsuccessfully attempted to locate Uranga at his residence between the hours of 7:00 a.m. to 5:00 p.m. approximately five to ten times between September and November. Uranga was unemployed. Uranga and his friend Jodi Cory testified that he was taking care of his grandmother at her property and was there for most of the day. They testified he would only return to his residence after 10:30 p.m.

Deputy Ruter testified that he served and executed a search warrant on November 17. After searching the property, he found no signs that Uranga had been living there and could not find any personal property belonging to Uranga. He stated that the residence and items inside were covered in dust, and it did not appear as if anyone had been living there. When asked what he looks for to determine whether someone is living at a residence he stated, "[a]nything you can imagine. I mean, toiletries, cell phone chargers, pillows, blankets, you know,

anything to indicate that he'd been sleeping or living there. Clothing, things of that nature." When asked if he found anything to indicate Uranga had been living there he responded, "No." Uranga was evicted from his registered address on November 18 but contends that he was aware of the eviction proceedings before then and that he and his mother had begun moving everything out before the official eviction notice.

Uranga reported a new residence—in person—to the Boone County Sheriff on the 30th of November. He reported the start date as November 19. The Boone County Sheriff filed a criminal complaint that same day. The State filed a trial information charging Uranga with two counts of violation of the sex offender registration requirements. The trial information was later amended to remove the second count. At trial, the State argued that Uranga was not living at his listed residence prior to the formal eviction but, even if he was, Uranga's appearance at the sheriff's office on the 30th of November was more than five business days since his November 18th eviction constituting the change in his residency. Uranga however contended that he was living at his principal residence until November 18, and he did not obtain new lodging until November 19. Thus, Uranga contends the change in his residency was the 19th of November. Such distinction is the difference between conviction or acquittal as will be explained below.

During trial, Uranga moved for judgment of acquittal at the close of the State's evidence, which the district court denied. Uranga renewed the motion on close of defense's evidence, and the district court again denied the motion. The jury found Uranga guilty as charged. The district court sentenced Uranga to a term of five years, with the sentence fully suspended.

Uranga now appeals.

## II.     Standard of Review

We review sufficiency of the evidence and questions of statutory interpretation for errors at law.  *State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018).  "In evaluating the sufficiency of the evidence, we consider whether the finding of guilt is supported by substantial evidence in the record."  *State v. Ernst*, 954 N.W.2d 50, 54 (Iowa 2021) (cleaned up).  "[S]ubstantial evidence exists when the evidence would convince a rational fact finder the defendant is guilty beyond a reasonable doubt."  *Kelso-Christy*, 911 N.W.2d at 666 (cleaned up).

Jury instructions are reviewed for correction of errors at law.  *State v. Ross*, 986 N.W.2d 581, 584 (Iowa 2023).  "Jury instructions are considered as a whole to determine their accuracy and are judged in context, not in isolation . . . ."  *Id.* (cleaned up).

## III.     Discussion

Uranga argues there was insufficient evidence to support his conviction and that the district court erred in failing to instruct the jury that the State had to prove that Uranga stayed away from his principal residence for more than five days.

### A.  Sufficiency of the Evidence

Uranga challenges the sufficiency of the evidence in two ways, first arguing that the State presented insufficient evidence to convict him as charged, and second, that the State presented insufficient evidence to convict him under Iowa Code section 692A.105.

Uranga first contends that there was not sufficient evidence to support his conviction for violating the sex offender registration requirements.  For the State to

prevail they needed to prove that on or around November 17 to November 29, 2021: (1) "Uranga was required to register as a sex offender"; (2) "Uranga resided in Boone County, Iowa"; (3) "Uranga changed his location from his principal residence"; (4) "Uranga failed to appear in person to notify the Boone County sheriff that he changed his location from his principal residence within five business days of the change"; and (5) "Uranga knew or reasonably should have known he was required to appear and register before November 30, 2021." To determine when the five-business day registration has passed, Iowa Code section 4.1(34) states that "in computing time, the first day shall be excluded and the last included."

Uranga does not contest that the State established the first, second, third, and fifth elements. There is no dispute that Uranga was required to register as a sex offender, he resided in Boone County, or that he changed his location from his principal residence. And Uranga himself testified that he was aware of the registration requirements to which he was required to adhere. The only element that is disputed between the parties is that Uranga failed to appear in person within five business days of a change occurring.

Uranga's primary argument in support of his claim that the State presented insufficient evidence is that the required "change" of his location did not occur on November 18 as the State alleged. He argues he moved to his new principal residence on November 19, and thus, the five-business-day countdown began on November 22 (the first business day following his November 19 "change"). But under section 692A.101(5), "change" means to "add, begin, or *terminate*." (Emphasis added.) As our supreme court clarified in *Coleman v. State*, the registration requirement mandates that a sex offender report his or her location

within five business days of a "change"—which can occur at the beginning of a new residence or at the termination of an old one. *See* 907 N.W.2d 124, 133–34 (Iowa 2018). So even if we accepted Uranga's theory that November 19 was a "change" date due to his new move-in, November 18 would also be a "change" date due to the termination of his residence. The marshaling instruction simply requires the jury to determine the date he "changed his location." The termination of his residence would be a change in his location.

And overwhelming evidence was presented showing Uranga's residence terminated on or before November 18. In addition to his eviction and Deputy Ruter's testimony, Patrick Fairchild testified that he was living on the property with Uranga and did not see him on the property the week before the search warrant was executed. Fairchild also testified that the items that were still in the house such as clothes, towels, and toiletries were his and not Uranga's. He testified that Uranga did not keep many personal items at the residence and would take whatever he brought elsewhere the next day. He also confirmed that the mess that was found when the search warrant was executed had been there prior to Uranga living there. Uranga countered asserting that the lack of personal items was because of the impending eviction, or that the items were his and not Fairchild's.

And Uranga's own testimony supported a conclusion that he changed his principal residence on the 18th of November as well. For example, Uranga testified that he and his mother were in the process of moving out and had packed up most of their belongings prior to the eighteenth. They spent the entire night of

the seventeenth packing up after the search warrant was served, and on the eighteenth, there wasn't anything left because they had moved it all.

Uranga further testified that he did not want to go back to the residence after the eviction. Once the November 18th eviction hearing concluded he never returned. He also testified that on the night of the eighteenth he began staying with a friend at the Pinnacle apartments—the address of which he later registered with the sheriff. Uranga—through his own testimony—established that the last day he lived at his former principal residence was the eighteenth, making it the first day of the change and excluded from the five-business-day countdown.

Substantial evidence supports the jury's finding that Uranga violated the sex offender registry requirements. A reasonable fact finder, based off the evidence presented, testimony heard, and reasonable inferences made could have found, beyond a reasonable doubt, that Uranga changed residence prior to November 19th and was in violation of the five-day-registration requirement.

Uranga contends, in his second sufficiency argument, that he could not have been convicted under Iowa Code section 692A.105 because that section pertains to changes in *temporary* lodging rather than changes in a *permanent* residence covered under section 692A.104. Because the State alleged that he changed his permanent residence and did not charge him with violating section 692A.104, he argues the State could not convict him under section 692A.105, which he argues is not triggered by a change of permanent residence.

But Uranga misreads section 692A.105. Section 692A.105 concerns the same "changes" contemplated by section 692A.104. Let us begin by looking at

the pertinent portion of section 692A.104, which we will analyze as they would relate to Uranga:

> 2. A sex offender shall, within five business days of changing a residence, employment, or attendance as a student, appear in person to notify the sheriff of each county where a change has occurred.
> 3. A sex offender shall, within five business days of a change in relevant information, other than relevant information enumerated in subsection 2, notify the sheriff of the county where the principal residence of the offender is maintained about the change to the relevant information. The department shall establish by rule what constitutes proper notification under this subsection.

Under these subsections, there are two "change" dates that may be relevant to Uranga for the purpose of determining the date of a potential violation—first, the date on which he terminates his residence, and second, the date on which he begins his new residence. *See* Iowa Code § 692.101(5) (defining "change" to mean "add, begin, or terminate"). But what of transient habitation with no new principal place in sight? That is where section 692A.105 enters:

> In addition to the registration provisions specified in section 692A.104, a sex offender, within five business days of a change, shall also appear in person to notify the sheriff of the county of principal residence, of any location in which the offender is staying when away from the principal residence of the offender for more than five days . . . .

Under this section, a sex offender who was evicted from their residence but does not immediately establish a new residence must meet *multiple* reporting requirements.[1] *See id.* The sex offender must report, within five business days,

---

[1] We primarily entertain a scenario that applies to Uranga. There are numerous other ways to trigger a section 692A.105, such as when a sex offender's primary residence does not terminate, but he stays in a different temporary location for more than five days.

*both* (1) the termination of his old residence and (2) his current transitory location, if he has been at such transitory location for more than five days.

As our supreme court stated in *Coleman*, "we read statutes as a whole rather than looking at words and phrases in isolation." 907 N.W.2d at 136 (cleaned up). Section 692A.105 expressly sets forth that the sex offender must adhere to section 692A.104 to be in compliance with section 692A.105. *See* Iowa Code § 692A.105 (requiring the offender to comply with "the registration provisions specified in section 692A.104"). And section 692A.105's use of "change" is the same as section 692A.104's "change" relative to the five-business-day countdown. Thus, Uranga's termination of residence triggered a change under section 692A.105 just as it would have under section 692A.104—temporary or permanent.

Accordingly, we find the State presented sufficient evidence to convict Uranga as charged and find no error in the district court's entry of judgment on the jury verdict finding Uranga guilty of a violation under Iowa Code section 692A.105.

### B. Jury Instruction

In a similar vein to his second sufficiency argument, Uranga contends that the district court erred in instructing the jury that he could be convicted if he failed to notify the sheriff that he "changed his location from his principal residence within five business days." He argues that the instruction should have instead instructed the jury that he could be convicted if he failed to notify the sheriff that he "stay[ed] away from the principal residence for more than five days."

Indeed, section 692A.105 requires the sex offender to notify the sheriff "of any location in which the offender is staying when away from the principal

residence of the offender for more than five days." But section 692A.105 also requires the sex offender "to notify the sheriff" "within five business days of a change" under section 692A.104. As detailed above, there is no difference between section 692A.105's use of "change" and 692A.104's use. And our supreme court has held that the requirement that a sex offender "make notification of his absence when he changes his location from his principal residence, reasonably construes the statute in a way that is consistent with the legislature's purpose and intent." *Coleman*, 907 N.W.2d at 136.

And in Uranga's situation, the termination of his permanent residence was the first "change" relevant to compliance under section 692A.105. Again, similar to his sufficiency arguments, Uranga tries to negate his eviction change with a later new residence change. He provides no citation to case law standing for the proposition that a sex offender may fail to report residency changes when multiple changes occur within a short period. To the contrary, "[t]he purpose of the registry is protection of the health and safety of individuals, and particularly children, from individuals who, by virtue of probation, parole, or other release, have been given access to members of the public." *Id.* (citation omitted).

The district court did not err in its instructions to the jury. We therefore affirm the district court in all respects.

**AFFIRMED.**